1  JEFFREY A. TOPOR (SBN 195545)
   jtopor@snllp.com
2  ARVIN C. LUGAY (SBN 242599)
   alugay@snllp.com
3  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
4  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
5  Facsimile:   (415) 352-2625
6
7  Attorneys for defendants
   Hunt & Henriques, Michael S. Hunt,
8  Janalie Henriques, Kurtiss A. Jacobs

9
                UNITED STATES DISTRICT COURT
10
                CENTRAL DISTRICT OF CALIFORNIA
11
                     WESTERN DIVISION
12

13  JUDITH E. GREENBERG,              )  CASE NO.:  11CV-3469 JHN (JCx)
                                      )
14              Plaintiff,            )  **DEFENDANTS' REPLY**
                                      )  **MEMORANDUM IN SUPPORT**
15                                    )  **OF MOTION FOR JUDGMENT**
                                      )  **ON THE PLEADINGS (FDCPA)**
16         vs.                        )  **AND SPECIAL MOTION TO**
                                      )  **STRIKE PURSUANT TO C.C.P. §**
17                                    )  **425.16 (NEGLIGENCE)**
    HUNT & HENRIQUES, MICHAEL         )
18  S. HUNT, JANALIE HENRIQUES,       )  Date:    June 27, 2011
    KURTISS A. JACOBS,                )  Time:    2:00 p.m.
19                                    )  Ctrm:    790
                                      )
20              Defendants.           )  The Honorable Jacqueline H. Nguyen
                                      )
21  _____ )

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.     INTRODUCTION................................................... 1

II.    PROCEDURAL HISTORY........................................ 1

III.   ARGUMENT....................................................... 3

       A.     Defendants Have Not Moved To Strike Greenberg's FDCPA
              Claims Under The Anti-SLAPP Statute: They Have Moved For
              Judgment On The Pleadings Under Rule 12(c)................. 3

       B.     The State Court Has Already Confirmed That Account Stated
              Is A Proper Cause Of Action To Recover An Unpaid Credit Card
              Account........................................................ 4

       C.     Greenberg's Claim That The Assertion Of Common Counts Violates
              The FDCPA Fails As A Matter Of Law......................... 5

       D.     The State Court Has Already Ruled That FIA Did Not Seek Improper
              Interest In The Collection Complaint........................ 9

       E.     Greenberg's Negligence Claim Must Be Stricken Because It Arises
              Out Of Litigation And Is Barred By The Litigation Privilege...... 11

              1.     The Anti-SLAPP Statute Applies...................... 11

              2.     Greenberg Cannot Prevail Because Her Negligence Claim Is
                     Barred By The Litigation Privilege................... 13

       F.     Defendants Are Entitled To An Award Of Attorneys' Fees And
              Costs Incurred In Connection With Their Anti-SLAPP Motion.... 14

IV.    CONCLUSION.................................................... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aetna Cas. & Surety Co. v. Kerr-McGee Chem Corp.*,
875 F.2d 1252 (7th Cir. 1989) ..................................................................6

*Beler v. Blatt. Hasenmiller. Leibsker & Moore. LLC.*
480 F.3d 470 (7th Cir. 2007) ....................................................................9

*Chase Bank USA, N.A. v. McCoy*,
131 S. Ct. 871 (2011)..............................................................................10

*District of Col. Court of Appeals v. Feldman*,
460 U.S. 462 (1983)..................................................................................5

*Donohue v. Quick Collect, Inc.*,
592 F.3d 1027 (9th Cir. 2010) ..................................................................8

*Francesco v. Beacon Court Condominium*,
2009 WL 174184 (S.D.N.Y. Jan. 6, 2009) ...............................................5

*Hahn v. Triumph Partnerships LLC*,
557 F.3d 755 (7th Cir. 2009)....................................................................8

*Kelly v. Med-1 Solutions, LLC*,
548 F.3d 600 (7th Cir. 2008)....................................................................5

*Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*,
98 F. Supp. 2d 958 (N.D. Ill. 2000)..........................................................6

*Marquette Nat. Bank of Minneapolis v. First of Omaha Serv. Corp.*,
439 U.S. 299 (1978)................................................................................10

*McCoy v. Chase Manhattan Bank, USA*,
559 F.3d 963 (9th Cir. 2009)..................................................................10

*Miller v. Javitch, Block & Rathbone*,
561 F.3d 588 (6th Cir.2009)..................................................................8-9

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923)..................................................................................5

*Smiley v. Citibank (S.D.), N.A.*,
517 U.S. 735 (1996)................................................................................10

*Swanson v. Southern Or. Credit Serv., Inc.*,
869 F.2d 1222 (9th Cir. 1989)..................................................................8

*Virachack v. University Ford*,
410 F.3d 579 (9th Cir. 2005).....................................................................7

*Wahl v. Midland Credit Mgmt., Inc.*,
556 F.3d 643 (7th Cir. 2009)......................................................................8

*Welch v. Unum Life Ins. Co. of Am.*,
649 F. Supp. 2d 1220 (D. Kan. 2009)........................................................5

## STATE CASES

*Birotte v. Superior Court*,
2009 WL 2857509 (Cal. Ct. App. Sept. 8, 2009)......................................13

*Briggs v. Eden Council for Hope & Opportunity,*
19 Cal. 4th 1106 (1999).............................................................................13

*Daniels v. Robbins*,
182 Cal. App. 4th 204 (2010)....................................................................13

*Flatley v. Mauro*
39 Cal. 4th 299 (2006)....................................................................11, 12, 13

*Gallanis-Politis v. Medina*,
152 Cal. App. 4th 600 (2007)....................................................................13

*HMS Capital, Inc. v. Lawyers Title Co.*,
118 Cal. App. 4th 204 (2004)....................................................................13

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2004).............................................................................15

*Mann v. Quality Old Time Serv., Inc.*,
120 Cal. App. 4th 90 (2004)......................................................................13

*Miller v. Filter*
150 Cal. App. 4th 652 (2007)....................................................................12

*Murray v. Alaska Airlines, Inc.*,
50 Cal. 4th 860 (2010)................................................................................ 4

*Navarro v. IHOP Props., Inc.*,
134 Cal. App. 4th 834 (2005)....................................................................14

*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon
Animal Cruelty USA, Inc.*,
143 Cal. App. 4th 1284 (2006)..................................................................12

*Paul for Council v. Hanyecz*,
85 Cal. App. 4th 1356 (2001)....................................................................12

*Raining Data Corp. v. Barrenechea*,
175 Cal. App. 4th 1363 (2009)..................................................................13

*Ramaligam v. Thompson,*
151 Cal. App. 4th 491 (2007)..................................................................14

*Salma v. Capon*
161 Cal. App. 4th 1275 (2008)................................................................13

# FEDERAL STATUTES

*Fair Debt Collection Practices Act,*

    15 U.S.C. § 1692e.............................................................................. 8
    15 U.S.C. § 1692e(2)(A)..................................................................... 7
    15 U.S.C. § 1692f.............................................................................. 8
    15 U.S.C. § 1692f(1) ................................................................7, 9, 10
    15 U.S.C. § 1692k(c) ..........................................................................7

*National Bank Act,*

    12 U.S.C. § 85 .................................................................................10

*Truth in Lending Act,*

    15 U.S.C. § 1601 *et seq.*...............................................................2, 6
    15 U.S.C.§ 1601(a)............................................................................ 7
    15 U.S.C. § 1604 ...............................................................................6
    15 U.S.C. § 1605 ...............................................................................6
    15 U.S.C. § 1606 ...............................................................................6
    15 U.S.C. § 1637 ...........................................................................2, 6
    15 U.S.C. § 1642 ...........................................................................2, 6
    15 U.S.C. § 1646.................................................................................2

*Federal Rule of Civil Procedure,*
    12(c)........................................................................................... 3, 4

# STATE STATUTES

*California Code of Civil Procedure,*

    § 425.16.............................................................................................3
    § 425.16(b) ......................................................................................13
    § 425.16(c) ......................................................................................14
    § 425.16(c)(1) .................................................................................15
    § 426.16(a).......................................................................................12

*California Civil Code,*

§1747.01...................................................................................................2
§1747.05...................................................................................................2
§1748.11...................................................................................................2
§1748.14...................................................................................................2
§1916-1...................................................................................................10

# I.      INTRODUCTION

Since Defendants filed their opening memorandum, the state court held a trial in the collection action prosecuted by Defendants, on behalf of their client, FIA Card Services, N.A., against plaintiff Judith Greenberg.  Based on the undisputed evidence, the state court found that FIA had "proven the elements of its common count cause of action for an account stated."  Consequently, the Court entered judgment in favor of FIA for the full amount sued upon, including the interest assessed by FIA on Greenberg's account.

In other words, the state court rejected Greenberg's theory that a credit card company cannot sue on common counts to recover an unpaid credit card debt, but can only sue for breach of contract, as well has her theory that absent a written agreement, interest on the account is capped according to state law.  Greenberg is collaterally estopped from relitigating those issues here.  Because the foundation for her claim that Defendants violated the Fair Debt Collection Practices Act has now been demolished, Defendants are entitled to judgment on the pleadings as to her FDCPA claim.

Defendants are also entitled to have Greenberg's negligence claim stricken pursuant to California's anti-SLAPP statute.  She does not dispute that the claim arises out of FIA's lawsuit, which is constitutionally-protected activity.  Because the claim is barred by California's litigation privilege, Greenberg cannot meet her burden of demonstrating a substantial likelihood that she will prevail on the merits of her negligence claim.

Greenberg had her day in court and lost.  She is bound by the state court's rulings, which obliterate her claims here.  There is no reason for this lawsuit to continue.  Defendants' motion should be granted, and they should be awarded all of the reasonable attorneys' fees and costs they incurred in moving to strike the negligence claim.

## II.     **PROCEDURAL HISTORY**

On March 1, 2011, the state court granted Greenberg's motion to file an amended answer to FIA's collection complaint.  *See* Opposition Ex. B.[1]  In her amended answer, Greenberg asserted various affirmative defenses, including that FIA's claims were "void as illegal" because FIA had failed to comply with "15 U.S.C. § 1601 *et seq.*," the federal Truth In Lending Act ("TILA"), and with section 1748.11 of the California Civil Code, the Areias Credit Card Full Disclosure Act (the "Areias Act").  *See id.* (Seventh Affirmative Defense).

After Defendants filed this motion, the state-court collection action proceeded to trial, where Greenberg challenged FIA's right to pursue common counts against her.  Thus, Greenberg moved, *in limine*, to exclude evidence "relating to any alleged indebtedness based upon the alleged 'common count' set forth in [FIA's] Complaint."  *See* Request for Judicial Notice In Support of Defendants' Reply, Ex. A at 2:7-8 (Motion In Limine No. 1).  Citing various provisions of TILA and the Areias Act,[2] Greenberg argued that FIA's claims were based on an "illegal transaction, an alleged credit card transaction in which the Plaintiff failed to comply with both Federal and California state law, and thus the entire transaction was void."  *See id.* at 2:9-11.  She further argued that "no written contract is alleged although a written contract is necessary to establish a claim under the common count of an open book account."  *See id.* at 3:4-5.  In a second motion *in limine*, seeking to exclude evidence "relating to the issue of an 'open book account,'" Greenberg stated that "the issue is whether there must be a prior written agreement to support a credit card debt," and argued that "there must be a

---

[1] Defendants do not oppose Greenberg's request to take judicial notice of the state-court-related documents attached as exhibits to her opposition.

[2] Specifically, 15 U.S.C. §§ 1637, 1642 & 1646, and California Civil Code §§ 1747.01, 1747.05, 1748.11 & 1748.14.

1   prior written contract to support an account stated cause of action." *See id.*, Ex. B

2   at 2:5-6, 3:2-6 (Motion In Limine No. 2).  Following a hearing, the state court

3   denied Greenberg's motions.  *See* Declaration of Kurtiss A. Jacobs In Support of

4   Defendants' Reply at ¶¶ 3-4.

5        After trial, at which both parties presented evidence and were allowed to

6   present argument, the state court issued its decision.  *See* Opposition Ex. C at

7   second page, first paragraph.  Based on the undisputed evidence, the court found

8   that Greenberg applied for, received and used the FIA credit card to obtain cash

9   advances totaling $18,000; that she was sent monthly statements detailing the

10  amount owed; that she never disputed any of the amounts owed as set forth in the

11  monthly statements; and that she made intermittent payments "without objection,"

12  before ultimately defaulting on the account.  *See id.* at second paragraph.

13  Accordingly, the Court found that FIA had "proven the elements of its common

14  count cause of action for an account stated," and found "no substantial evidence

15  supporting [Greenberg's] affirmative defenses."  *See id.* at fourth paragraph.  The

16  Court therefore entered judgment in favor of FIA and against Greenberg for

17  $19,636.61.  *See id.* at first page & at second page, sixth paragraph.[3]

18  **III.   ARGUMENT**

19        **A.    Defendants Have Not Moved To Strike Greenberg's FDCPA**
20               **Claims Under The Anti-SLAPP Statute; They Have Moved For**
               **Judgment On The Pleadings Under Rule 12(c)**

21        Greenberg does not dispute the standard that this Court must apply when

22  analyzing Defendants' motion for judgment on the pleadings as to her FDCPA

23  claims.  Frankly, this is not surprising, given that she completely misapprehends

24  the basis of Defendants' motion.

25

26

27        [3] In light of its ruling, the Court denied as moot a motion made by FIA after the
    close of evidence to amend its complaint to conform to the proof by adding a cause
28  of action for breach of contract.  *See id.* at second page, sixth paragraph.

1    Specifically, after devoting the bulk of her opposition to discussing her
2    FDCPA claims, Greenberg argues that "Defendants' Anti-SLAPP Motion to Strike
3    must be denied because [her] claims are meritorious."  *See* Opposition at 8:4-5.
4    Defendants, however, did not move to strike Greenberg's FDCPA claims pursuant
5    to section 425.16 of the California Code of Civil Procedure.  Rather, they moved
6    for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil
7    Procedure.  *See* Doc. No. 6 at i:5-9, 14-16, 3:22-13:4.  The only claim that
8    Defendants moved to strike is Greenberg's negligence claim.  *See id.* at i:9-11,
9    13:5-23:26.

10   **B.    The State Court Has Already Confirmed That Account Stated Is A**
11   **Proper Cause Of Action To Recover An Unpaid Credit Card**
     **Account**

12   Despite the fact that the state court affirmed the right of a credit card
13   company to bring an account stated claim to recover an unpaid credit card debt,
14   Greenberg continues to pursue her theory that an action to collect a credit card debt
15   can be for breach of contract only, and cannot be based on common counts.
16   Greenberg, however, is bound by the state court's ruling; the doctrine of collateral
17   estoppel prevents her from relitigating this issue in this Court.

18   As the California Supreme Court recently observed:

19   The doctrine of collateral estoppel, or issue preclusion, is firmly embedded
20   in both federal and California common law.  It is grounded on the premise
     that once an issue has been resolved in a prior proceeding, there is no further
     fact-finding function to be performed.  Collateral estoppel . . . has the dual
21   purpose of protecting litigants from the burden of relitigating an identical
     issue with the same party or his privy and of promoting judicial economy, by
22   preventing needless litigation.

23   *Murray v. Alaska Airlines, Inc.*, 50 Cal. 4th 860, 864 (2010) (citations, quotation
24   marks and footnotes omitted).  Where there is a subsequent action between two
25   parties involving different claims, collateral estoppel "operates as an estoppel or
26   conclusive adjudication as to such issues in the second action which were actually
27   litigated and determined in the first action."  *Id.* at 867.

28   Greenberg has already tried to prove that a credit card issuer cannot sue to

recover an unpaid credit card debt by asserting common counts.  She lost on this issue after a full trial.  She was represented at that trial by the same counsel that represents her in this case.  She had her "day in court" on this claim, and cannot pursue it again.[4]

### C.   Greenberg's Claim That The Assertion Of Common Counts Violates The FDCPA Fails As A Matter Of Law

Even if she were not barred from relitigating her claim here, Greenberg cites no support for her theory and ignores the multitude of cases cited by Defendants from across the country that have rejected it.[5]  In fact, the only thing that Greenberg says about these cases is that a small number of them are "unpublished" – and thus not precedential – because they are only available on Westlaw.  Notably, Greenberg provides no authority for her argument that this Court should ignore the handful of cases cited by Defendants that are available only online.  Nor could she.  The fact that a decision is available only in a computerized database, such as Westlaw or LEXIS, does not mean the decision is "unpublished," let alone that it cannot be cited as precedential or persuasive authority.[6]

---

[4] Of course, the *Rooker-Feldman* doctrine prevents this Court from reviewing the propriety of the state court's rulings.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Col. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Kelly v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) ("A state litigant seeking review of a state court judgment must follow the appellate process through the state court system and then directly to the United States Supreme Court.").

[5] Greenberg maintains that the "California law [is] unsettled as to whether a credit card debt could be collected upon any common count cause of action."  *See* Opposition at 6:24-26.  She does not, however, identify any conflicting decisions on the issue, let alone any California appellate decision holding that action to collect an unpaid credit card can only be based on a claim for breach of contract.

[6] There is "little relevance" whether a decision "is included in a bound volume versus being available on-line."  *Welch v. Unum Life Ins. Co. of Am.*, 649 F. Supp. 2d

Regardless, even if the Court ignored the online decisions that Defendants have cited, Greenberg has still failed to address, let alone distinguish, the numerous other authorities available in bound reporters that Defendants cited. *See* Doc. No. 6 at 7:14-9:19.  Instead, Greenberg argues that "Congress created a comprehensive and detailed scheme for credit card lenders to establish and enforce credit card debts." *See* Opposition at 5:4-5.

Contrary to her suggestion, nothing in the "scheme" upon which Greenberg relies – TILA  – dictates or limits the causes of action that a credit card issuer may allege when suing to collect an unpaid credit card debt.[7]  Rather, Congress enacted

---

1220, 1224 (D. Kan. 2009).  Thus, decisions only available online carry equal weight to those published in books.  *See Francesco v. Beacon Court Condominium*, 2009 WL 174184, *1 n.5 (S.D.N.Y. Jan. 6, 2009) (rejecting suggestion that district court decisions published only on Westlaw or LEXIS are not intended to carry precedential weight of district court decisions published in  Federal Supplement or Federal Rules Decisions series).  Whether a decision is "unpublished," and thus not citable, is controlled by court rule, not by where the decision can be found.  As one court explained, quoting the Seventh Circuit, "'[i]f there is no rule in the court rendering a decision limiting the precedential value of its opinions, those opinions may be cited and are entitled to whatever weight the persuasive force of their reasoning warrants.'" *Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 959 n.1 (N.D. Ill. 2000) (denying motion to strike pleading that cited decisions available only on Westlaw where no local rule barred citation), *quoting Aetna Cas. & Surety Co. v. Kerr-McGee Chem Corp.*, 875 F.2d 1252, 1255 n.2 (7th Cir. 1989).  Greenberg has not identified any Court rule prohibiting citation to decisions available only in electronic databases such as Westlaw.  Local Rule 11-3.9.3 does not prohibit citation to Westlaw.

[7]  Greenberg cites sections 1601, 1604, 1605, 1606, 1637 and 1642 of TILA. Respectively, those provisions concern the following:  "Congressional findings and declaration of purpose"; "Disclosure guidelines"; "Determination of finance charge"; "Determination of annual percentage rate"; "Open end consumer credit plans"; and, "Issuance of credit cards."  Nothing in the plain language of any of those provisions even mentions lawsuits brought to enforce an unpaid credit card debt.  Furthermore, these provisions formed the basis of Greenberg's Seventh Affirmative Defense, for which the state court found there was no supporting evidence.  Greenberg is bound

TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a).  In other words, "[t]he central purpose of TILA is to provide the 'informed use of credit' by requiring 'meaningful disclosure of credit terms' to consumers," *Virachack v. University Ford*, 410 F.3d 579, 585 (9th Cir. 2005),[8] not to restrict a creditor's right to petition the courts for redress when a consumer defaults on her account.  Permitting a credit card issuer to pursue common counts is not, as Greenberg contends, "clearly contrary" to this purpose.  Tellingly, Greenberg cites no decision, binding or otherwise, holding that attorneys asserting common counts on behalf of their creditor clients "nullify the express 'Declaration of Purpose' of Congress," *see* Opposition at 5:25-26, and thereby violate the FDCPA.

Indeed, Greenberg has failed to cite a single case holding that suing to collect a credit card debt on a common-count basis violates the FDCPA.[9]  For the first time, Greenberg contends that it is a *per se* unfair practice to assert account stated or common count claims in a lawsuit because the "least sophisticated debtor" does not know what such claims are.  *See id.* at 7:9-10.  Although Greenberg is correct that the FDCPA is a strict liability statute (in the absence of a bona fide

_____

by that finding and collaterally estopped from relitigating it here.

[8]  Greenberg does not allege that Defendants violated TILA, nor could she, given that they are not creditors and thus are not subject to the Act.  *See* 15 U.S.C. § 1602(e).

[9]  In her complaint, Greenberg asserts a claim under section 1692f(1) of the FDCPA only.  In her opposition to Defendants' motion, Greenberg claims – for the first time – that Defendants also violated section 1692e(2)(A) of the FDCPA.  *See* Opposition. at 4:21-24. That provision prohibits debt collectors from using falsely representing "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  The state court has already adjudicated the legal validity of the debt.

1   error, under 15 U.S.C. § 1692k(c)), and that "communications" from debt

2   collectors are generally analyzed objectively from the perspective of the least

3   sophisticated consumer,[10] she is incorrect in her conclusion.  Neither of the Ninth

4   Circuit decisions cited by Greenberg on page 7 of her opposition held that a debt

5   collector violates the FDCPA by asserting common counts in a collection

6   complaint.  In any event, asserting such claims in a collection complaint does not

7   violate the FDCPA because the terms are not materially misleading.[11]

8         Following the lead of the Sixth and Seventh Circuit,[12] the Ninth Circuit

9   recently held that a false and misleading statement does <u>not</u> violate sections 1692e

10  or 1692f of the FDCPA unless the statement is "material."  *See Donohue*, 592 F.3d

11  at 1033-34.  A "material" misstatement is one that is "genuinely misleading" and

12  that "may frustrate the consumer's ability to intelligently choose his or her

13  response" to the collector's communication.  *Id*. at 1034.  The Court stated:  "We

14  now conclude that false but non-material representations are not likely to mislead

15  the least sophisticated consumer and therefore are not actionable under §§ 1692e or

16  1692f."  *Id.* at 1033.  *Donohue* reflects an emerging consensus among federal

17  appellate courts that rejects highly-technical alleged violations of the FDCPA, like

18  the one now asserted by Greenberg.  These courts all recognize that collectors

19  should not be penalized for making immaterial misstatements during the collection

20  process that neither harm nor mislead anyone.

21

22         [10]  *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010);
23   *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996); *Swanson v.
    Southern Or. Credit Serv., Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1989) (per curiam).

24

25         [11]  Defendants note that the collection complaint was filed using a form
    complaint approved by the Judicial Council of California.  *See* Opposition at Ex. A.

26

27         [12]  *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588 (6th Cir. 2009); *Hahn v.
    Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009); *Wahl v. Midland Credit
28   Mgmt., Inc*., 556 F.3d 643 (7th Cir. 2009).

1    Under *Donohue*, then, a plaintiff must prove "materiality" by showing how

2  an allegedly false or misleading statement would impact the least sophisticated

3  debtor's ability to make intelligent choices.  The plaintiff must explain how the

4  least sophisticated consumer might have changed positions as a result of the

5  allegedly false and misleading statement.  Greenberg cannot even clear the first

6  hurdle:  she has not identified a false statement made in FIA's collection complaint.

7  But even if the use of the phrases "account stated" or "common counts" was

8  somehow false (which it was not), there was nothing materially misleading about

9  their use.

10    The Sixth Circuit rejected a similar argument in *Miller*.  There, the law firm

11 filed a collection complaint on behalf of its debt buyer client seeking to recover an

12 unpaid credit card debt from a consumer, and asserting a claim "for money loaned."

13 The consumer alleged that the "money loaned" claim was a false statement in

14 violation of the FDCPA, because the credit card was an account receivable, not a

15 loan.  *See Miller*, 561 F.3d at 590, 592.  The Sixth Circuit disagreed, concluding

16 that the statement was not false.  *See id.* at 592-94.  As the Court explained:

17    [Not] everything a lawyer writes during the course of litigation must be
     stated in plain English understandable by unsophisticated consumers.
18   However desirable that might be, it is not a command to be found in the
     FDCPA.
19
     Section 1692e does not require clarity in all writings.  What it says is that
20   '[a] debt collector may not use any false, deceptive, or misleading
     representation or means in connection with the collection of any debt.'  A
21   rule against trickery differs from a command to use plain English and write
     at a sixth-grade level. . . .  It was the judge, not [the plaintiff], who had to be
22   able to determine to whom the debt was owed, for it is the judge (or clerk of
     court) rather than the defendant who prepares the judgment specifying the
23   relief to which the prevailing party is entitled.

24 *Id.* at 593-94, quoting *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480

25 F.3d 470, 473 (7th Cir. 2007).

26    Furthermore, the court concluded that the statement was not material,

27 chastising the consumer (and her counsel) for relying "on a too technical reading of

28 the complaint."  Instead, the Court emphasized, when read "in a common sense

way," the least sophisticated consumer would understand the language of the complaint.

The same result should obtain here.  There is nothing false about the phrases "account stated" or "common counts."  Nor does the use of these phrases – on a form approved by California's Judicial Council – impair the least sophisticated consumer's ability to choose how to respond to a lawsuit.  Clearly, they did not frustrate Greenberg; although it was undisputed that she was liable for the unpaid debt, she vigorously defended against the lawsuit.  The reference to "account stated" or "common counts" in the collection complaint was neither false nor materially misleading, and therefore did not violate the FDCPA.

For the unopposed reasons set forth in their opening memorandum, and the reasons set forth here, Defendants submit that their assertion of common counts on behalf of FIA did not, as a matter of law, violate the FDCPA.  Judgment on the pleadings is warranted.

**D.    The State Court Has Already Ruled That FIA Did Not Seek Improper Interest In The Collection Complaint**

Greenberg also claims that Defendants violated section 1692f(1) of the FDCPA because there was no written contract allowing FIA to assess interest at a rate of 29.99%.  The state court, however, already determined that FIA was entitled to recover interest, and it entered judgment for FIA that included the interest it had assessed against Greenberg.  She is collaterally estopped from relitigating this issue here.

Regardless, as explained in Defendants' opening memorandum (*see* Doc. No. 6 at 10:17-12:10), FIA did not need a written credit card agreement to support its account stated claim, which included the interest rate set forth in the monthly statements that Greenberg was sent.  As the undisputed evidence offered at trial established, Greenberg did not contest any of the information contained in those statements.  Thus, an account was stated that included the 29.99% interest rate.  As

1   a matter of law, Defendants sought to recover an amount that was "expressly
2   authorized by the agreement creating the debt." *See* 15 U.S.C. § 1692f(1).

3       Greenberg has not addressed Defendants' argument in her opposition.
4   Instead, she argues that in order to charge more than 7% interest, section 1916-1 of
5   the California Civil Code requires a lender "to have a written contract." *See*
6   Opposition at 7:19-22.  The state court, however, expressly found that "[a] Credit
7   Card Agreement was sent to [Greenberg] along with the credit card." *See*
8   Opposition at Ex. C, second page, second paragraph.

9       Furthermore, Greenberg's argument flies in the face of the National Bank
10  Act, which permits national banks like FIA[13] to charge interest at the rate allowed
11  by the laws of the state in which the bank is located, even if that interest rate is
12  prohibited by the law of the state where the consumer is located.  *See* 12 U.S.C. §
13  85; *see, e.g., Marquette Nat. Bank of Minneapolis v. First of Omaha Serv. Corp.*,
14  439 U.S. 299, 308 & n. 24 (1978); *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735,
15  737 (1996); *McCoy v. Chase Manhattan Bank, USA*, 559 F.3d 963, 970 (9th Cir.
16  2009), *reversed and remanded on other grounds sub nom. Chase Bank USA, N.A.
17  v. McCoy*, 131 S. Ct. 871 (2011).  California's interest-rate cap is thus irrelevant.
18  Further, Greenberg provides no authority for the proposition that, to qualify for the
19  exemption "from California interest rate limitations," FIA needed "to have a
20  written contract." *See* Opposition at 7:18-21.  Federal law, not California law,
21  dictates the interest rate that FIA may charge:  the rate authorized by FIA's home
22  state. *See* 12 U.S.C. § 85.  Greenberg does not allege that FIA was barred by its
23  home state's law from assessing interest at a rate of 29.99%.  Because FIA was
24  permitted to charge this interest rate, Defendants did not violate the FDCPA by
25  filing a collection complaint that sought to collect interest assessed at that rate by
26  FIA.  Defendants are entitled to judgment on the pleading as to Greenberg's

27  _____

28  [13] Greenberg "admits that FIA is a national bank." *See* Opposition at 7:17-18.

1    FDCPA claim.[14]

2    **E.    Greenberg's Negligence Claim Must Be Stricken Because It Arises Out Of Litigation And Is Barred By The Litigation Privilege**

3

4    **1.    The Anti-SLAPP Statute Applies**

5        Greenberg does not dispute that her negligence claim arises out of

6    Defendants' pre-litigation investigation and filing of the collection complaint on

7    behalf of their client, FIA.  She argues, however, that the anti-SLAPP statute does

8    not apply because Defendants' conduct was illegal as a matter of law.[15]  She is

     wrong.

9        Greenberg relies on *Flatley v. Mauro*, 39 Cal. 4th 299 (2006), but it does not

10   apply here.  There, a celebrity sued an attorney who represented a woman who

11   claimed the celebrity had raped her, after the attorney made written and oral

12   demands for a multi-million dollar settlement, threatening to sue the celebrity and

13   publicize the alleged rape if the demands were not met.  The celebrity asserted

14   claims against the attorney for extortion, intentional infliction of emotional distress

15   and wrongful interference with economic advantage; the attorney responded with

16   an anti-SLAPP motion.  *See id.* at 305.

17       The Court concluded that "a defendant whose assertedly protected speech or

18   petitioning activity was illegal as a matter of law, and therefore unprotected by

19   constitutional guarantees of free speech and petition, cannot use the anti-SLAPP

20

21   _____

22   [14] Greenberg states that her FDCPA claim was filed within the applicable one-year statute of limitations.  *See* Opposition at 8:15-19.  Defendants have not argued otherwise.

23

24   [15] It is far from clear that Greenberg is arguing that the anti-SLAPP statute does not apply to her negligence claim, as opposed to arguing that the statue does not apply to her FDCPA claim.  Because Defendants have not moved to strike Greenberg's FDCPA claim, they assume her argument is directed towards the negligence claim. Defendants submit, however, that the Court need not construe her papers so liberally, given that she is represented by counsel with more than forty years of experience.

25

26

27

28

statute to strike the plaintiff's complaint." *Id.* The Court recognized this narrow limitation on applying the statute because allowing it to be applied where the challenged conduct is illegal as a matter of law would not serve the statute's purpose of "prevent[ing] the chilling of 'the <u>valid</u> exercise of the constitutional rights of freedom of speech and petition for the redress of grievances' by 'the abuse of the judicial process.'" *Id.* at 313 (quoting Cal. Code Civ. Proc. § 426.16(a), underlining added).[16]

Under *Flatley*, the opposing party's burden is high:  it must show "by uncontroverted and conclusive evidence" that the petitioning activity was "illegal as a matter of law." *Id.* at 320.  In other words, the statute applies unless the movant  "concedes or it is conclusively established that the conduct was illegal as a matter of law." *Salma v. Capon*, 161 Cal. App. 4th 1275, 1287 (2008).  As one

---

[16]  In *Flatley*, the Court applied the California Penal Code definition of "extortion" in concluding that the underlying conduct was illegal as a matter of law. Assuming that *Flatley* applies where the underlying conduct is civilly, as opposed to criminally, unlawful, the "illegal as a matter of law" limitation applies only in "narrow," "rare" or "extreme circumstances." *See Flatley*, 39 Cal. 4th at 315, 320, 332 n.16.  Thus, courts have hesitated to apply *Flatley* unless the conduct is "undeserving of the protection of the anti-SLAPP statute." *See Miller v. Filter*, 150 Cal. App. 4th 652, 662 (2007)  Examples of other conduct that is <u>not</u> immunized by the anti-SLAPP statute include

> (1) the actions of animal rights activists who . . . broke windows of the homes of laboratory employees, vandalized their cars, set off ear-piercing alarms in their yards, left excrement on their doorsteps, and published personal information on the internet about employees, their spouses and their children--some of which was criminal conduct and none of which was protected by the First Amendment, . . . and (2) campaign money laundering--illegal conduct unprotected by the First Amendment.

*Id.* (citing *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 143 Cal. App. 4th 1284 (2006); *Paul for Council v. Hanyecz*, 85 Cal. App. 4th 1356 (2001)).

court recently observed, "'conclusively established' . . . has been equated to 'indisputable' or free of any doubt and held to require 'uncontroverted and conclusive evidence.'"  *Birotte v. Superior Court*, 2009 WL 2857509, *6 (Cal. Ct. App. Sept. 8, 2009).  Greenberg cannot clear this hurdle.

First, the state court has effectively found that FIA's assertion of common counts was lawful as a matter of law.  Second, Defendants do not concede, and Greenberg has not presented evidence conclusively establishing, that Defendants' filing of the collection complaint was illegal as a matter of law.

The filing a collection lawsuit is protected conduct, and is nothing like the conduct in *Flatley* or the handful of other cases applying it.  Defendants' filing of the collection complaint was not "illegal as a matter of law."  The anti-SLAPP statute applies.[17]

### 2.  Greenberg Cannot Prevail Because Her Negligence Claim Is Barred By The Litigation Privilege

The burden having shifted to her, *see HMS Capital, Inc. v. Lawyers Title Co.*, 118 Cal. App. 4th 204, 211-12 (2004), Greenberg has failed to establish a probability of prevailing on her negligence claim.  Greenberg does not dispute that negligence claims arising out of litigation are barred by California's litigation privilege.  *See Daniels v. Robbins*, 182 Cal. App. 4th 204, 215-16 (2010) (stating that "it is clear that the litigation privilege" forecloses pursuit of negligence and other claims arising from "filing a complaint against [Plaintiff] and filing other documents against [her] in the course of the lawsuit"); *Navarro v. IHOP Props., Inc.*, 134 Cal. App. 4th 834, 844 (2005) (privilege bars "'all torts other than

---

[17]  Greenberg does not otherwise dispute that the first prong of section 425.16(b) is triggered because her claims arise out of the protected activity of filing a lawsuit.  *See Briggs v. Eden Council for Hope & Opportunity,* 19 Cal. 4th 1106, 1115 (1999); *Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 1368 (2009); *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 103 (2004); *Gallanis-Politis v. Medina*, 152 Cal. App. 4th 600, 611 (2007).

1   malicious prosecution, including . . . negligence . . .”); *see also Ramaligam v.*

2   *Thompson*, 151 Cal. App. 4th 491, 503-05 (2007) (rejecting argument that

3   gravamen of claim was accountant's noncommunicative conduct underlying

4   opinion offered during dissolution proceedings; gravamen of claim was based on

5   accountant's opinion, which was communicative conduct and was therefore

6   barred).  The gravamen of Greenberg's claim is that Defendants filed a baseless

7   lawsuit against her, based on an inadequate pre-lawsuit investigation.  Even if the

8   allegedly negligent investigation is deemed non-communicative conduct, the

9   outcome of that investigation – the collection complaint – is a communication

10   subject to the litigation privilege.  Greenberg's negligence claim is thus barred by

11   the litigation privilege and must be stricken.[18]

12      Finally, Greenberg maintains that "the common counts complaint can be

13   used as here," apparently for "evidentiary" purposes.  *See* Opposition at 8:27-9:2.

14   She does not explain how she intends to use the collection complaint to prove her

15   negligence claim.  More importantly, she does not disavow her claim that

16   Defendants were negligent in filing the complaint.  Her negligence claim is barred

17   and must be stricken.

### F.   Defendants Are Entitled To An Award Of Attorneys' Fees And Costs Incurred In Connection With Their Anti-SLAPP Motion

18
19
20      Greenberg does not dispute that Defendants are entitled to a mandatory

21   award of attorneys' fees if their motion to strike her negligence claim is granted.

22   *See* Cal. Code Civ. Proc. § 425.16(c) ("In any action subject to subdivision (b), a

23   prevailing defendant on a special motion to strike **shall** be entitled to recover his or

24   her attorney's fees and costs."); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2004).

25   Nor does she challenge the hourly rates charged or the reasonableness of the time

26   incurred by Defendants' counsel.  As set forth in the Supplemental Declaration of

27   ────────────────

28   [18]  Of course, even if it was not barred, the state-court's ruling and entry of
     judgment in favor of FIA would put to rest Greenberg's negligence claim.

Jeffrey A. Topor filed herewith, Defendants have incurred attorneys' fees and costs in the amount of $7,038.00.[19]

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, and the reasons set forth in Defendants' opening memorandum, Defendant's motion for judgment on the pleadings and motion to strike must be granted.  Defendants respectfully request that they be awarded in $7,038.00 costs and attorneys' fees that they have incurred in connection with their motion to strike.

DATED:  June 13, 2011                          SIMMONDS & NARITA LLP
                                               JEFFREY A. TOPOR
                                               ARVIN C. LUGAY


                                        By:   /s/Jeffrey A. Topor
                                               Jeffrey A. Topor
                                               Attorneys for defendants
                                               Hunt & Henriques, Michael S. Hunt,
                                               Janalie Henriques, Kurtiss A. Jacobs

---

[19]  Greenberg claims that she should be awarded attorneys' fees pursuant to section 425.16(c)(1) of the Code of Civil Procedure.  Absent a finding that Defendants' motion to strike was "frivolous or solely intended to cause unnecessary delay," there is no basis to award Greenberg any fees. *See id.*  There is no basis for such a finding here.